UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Stephanie Champine

    v.                                        Civil No. 16-cv-539-PB
                                             Opinion No. 2018 DNH 008

Nancy A. Berryhill, Acting
Commissioner, Social
Security Administration


## MEMORANDUM AND ORDER

Pursuant to 42 U.S.C. § 405(g), Stephanie Champine moves to reverse the Acting Commissioner's decision to deny her application for supplemental security income, or SSI, under Title XVI of the Social Security Act, 42 U.S.C. § 1382. The Acting Commissioner, in turn, moves for an order affirming her decision. For the reasons that follow, the decision of the Acting Commissioner, as announced by the Administrative Law Judge ("ALJ"), is affirmed.

## I. BACKGROUND

The parties have submitted a Joint Statement of Material Facts. That statement, doc. no. 11, is part of the court's record and will be summarized here, rather than repeated in full.

Before Champine graduated from high school in 2009 with a

regular diploma, testing had revealed a full-scale intelligence quotient ("IQ") of 85, a verbal IQ of 75, and a performance IQ of 99. Testing conducted in July 2015 revealed a full-scale IQ of 77, a verbal IQ of 70, and a performance IQ of 90.

In April 2013, Champine applied for SSI, claiming that she had been disabled since January 1, 2007 as a result of depression and bipolar disorder. Subsequently, Champine amended the alleged onset date of her disability to July 19, 2012, and at her hearing before the ALJ, she "testified . . . that she [was] unable to work because of depression, anxiety, and difficulty reading and doing arithmetic." Administrative Transcript (hereinafter "Tr.") 15.

In a Disability Determination Explanation ("DDE") form that was completed by the Social Security Administration ("SSA") in July 2013, Dr. Edward Hurley, a psychological consultant who reviewed the evidence that had been provided to the SSA, determined that "[n]o mental medically determinable impairments [had been] established." Tr. 120, 130. He continued:

> No detailed psychological eval[uation] is on file to provide an MDI [medically determinable impairment], no SSA acceptable source diagnosis, claimant and rep[resentative] have not responded to attempts to obtain additional information or to state whether she would attend a CE [consultative examination] i[f] we reschedule (missed first CE before being transferred from NH). There is insufficient evidence to establish an MDI or to rate the severity of the claimant's

conditions due to failure to cooperate.[1] Tr. 120, 130. In a second DDE form, completed about three months after the first one, another psychological consultant, Dr. Joseph Patalano, reached the same conclusions that Dr. Hurley had reached. Tr. 140.

In October of 2014, Champine was seen by Dr. Jeffrey Kay for a consultative examination. Tr. 700. As a result of his examination, Dr. Kay produced a Mental Health Evaluation Report in which he gave diagnoses of: (1) attention deficit hyperactivity disorder ("ADHD"), combined type; and (2) major depressive disorder, recurrent, mild. Tr. 703. He did not, however, diagnose any mental impairment relating to Champine's intellectual capacity. He also provided the following opinions on Champine's then-current level of functioning:

> Activities of Daily Living: . . . She is able to take independent and consistent care of her 1-year old daughter and most of her housework and shopping. She is able to drive and maintain hygiene. She is not able to pay bills independently.
>
> Social Functioning: . . . Although I saw no signs of irritability during the interview, I am inclined to believe her report that she is very easily irritated and becomes explosive. I do not believe that she is currently capable of consistently interacting appropriately with peers, supervisors or the public.

---

[1] "A consultative examination is a physical or mental examination or test purchased for [a claimant] at [the SSA's] request." 20 C.F.R. § 416.919.

> Understanding and Remembering Instructions: . . .
> She is able to understand and remember simple
> instructions but her nursing home [employment]
> experience suggests that she cannot consistently and
> independently remember detailed instructions.
>
> Concentration and Task Completion: . . . She was
> very distracted by soft music playing outside of my
> office. She is able to complete most of the tasks
> that she currently undertakes but she is unable to
> maintain an appropriate pace.
>
> Reaction to Stress, Adaptation to Work or Work-like
> Situations: . . . She is easily stressed and when
> stressed she tends to cry, become very irritable and
> may have a panic attack. She is able to maintain
> attendance and a schedule but cannot consistently
> accept supervision unless it is very patient and
> respectful. She is able to make simple decisions.

Tr. 702-03. Under a heading asking him to list the signs, symptoms, and reasoning that supported his diagnoses, Dr. Kay reported:

> Her need[] for special education [while in high
> school], her inability to do serial 7s or spell
> [']world['] backwards, her distraction by music
> outside my office, her ability to focus on visual but
> not on auditory stimuli, and her constant irritability
> suggest ADHD rather than Bipolar Disorder. Manic
> symptoms do not recur concomitantly. The abusive
> relationship [several years ago, during her teens] has
> also contributed to her irritability. The abuse and
> the ADHD are probably responsible for her recurrent
> depression and her panic attacks.

Tr. 703.

After conducting a hearing, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

4

> 2. The claimant has the following medically determinable impairment[s]: depression, acid peptic disease and obesity (20 CFR 416.921 et seq.).
>
> 3. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 416.921 et seq.).

Tr. 14.

## II. STANDARD OF REVIEW

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .

42 U.S.C. § 405(g) (setting out the standard of review for decisions on claims for disability insurance benefits); see also 42 U.S.C. § 1383(c)(3) (establishing § 405(g) as the standard of review for SSI decisions). However, the court "must uphold a denial of social security . . . benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per

5

curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)). In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Currier v. Sec'y of Health, Educ. & Welfare, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). But, "[i]t is the responsibility of the [Acting Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations omitted). Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of Health & Human Servs., 842 F.2d 529, 535 (1st Cir. 1988) (per curiam).

Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

## III. DISCUSSION

**A.   The Legal Framework**

To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets. See 42 U.S.C. § 1382(a). The only question in this case is whether Champine was disabled between April 10, 2013 and September 23, 2015.

To decide whether a claimant is disabled for the purpose of determining eligibility for SSI benefits, an ALJ is required to employ a five-step sequential evaluation process. See 20 C.F.R. § 416.920.

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" ["RFC"] is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her

7

residual functional capacity, education, work
experience, and age, is unable to do any other work,
the application is granted.[2]

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

The claimant bears the burden of proving that she is disabled. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987). She must do so by a preponderance of the evidence. See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)). Finally,

> [i]n assessing a disability claim, the [Acting Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the [claimant] or other witness; and (3) the [claimant]'s educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6 (1st Cir. 1982)).

**B.  Champine's Claims**

Champine claims that the ALJ erred by: (1) failing to determine, at step 2 of the sequential evaluation process, that her depression, ADHD, and purported learning disability were severe mental impairments; and (2) failing to determine, at step

---

[2] "Residual functional capacity" is a term of art that means "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1).

8

3, that her purported learning disability meets or equals the severity of Listing 12.05C, which, at the time of her application, was labeled "mental retardation."[3] Because the ALJ did not err at step 2, there is no need to consider Champine's step 3 argument. In this section, the court begins by describing the step 2 severity threshold, and then discusses the ALJ's application of that standard to claimant's depression and ADHD and to her purported learning disability.

1. The Step 2 Threshold

In its most recent discussion of the step 2 threshold, the court of appeals for this circuit explained:

> An impairment is "severe" when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "Under Social Security Ruling 85-28, a claim may be denied at step 2 for lack of a severe impairment only where medical evidence establishes only a slight abnormality . . . which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered . . . ." Barrientos v. Secretary of Health and Human Services, 820 F.2d 1, 2 (1st Cir. 1987) (per curiam) (internal quotation marks and citation omitted). Social Security Ruling 85-28 (Medical Impairments that Are Not Severe) clarifies that the step two severity requirement is intended "to

---

[3] The impairment once called "mental retardation" was later renamed "intellectual disability," and is now called "intellectual disorder." Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46,499 (Aug. 1, 2013).

9

do no more than screen out groundless claims."
McDonald v. Secretary of Health and Human Services,
795 F.2d 1118, 1124 (1st Cir. 1986).

Ramos v. Barnhart, 60 F. App'x 334, 335 (1st Cir. 2003) (per curiam). Put more simply, "the Step 2 severity requirement is . . . a de minimis policy." McDonald, 795 F.2d at 1124.

Champine argues that the ALJ erred at step 2 by not finding that she had severe mental impairments, and that this error was not harmless because the ALJ did not consider these impairments when determining her RFC at step 4. To be sure, when an ALJ errs at step two by failing to determine that an impairment is severe, that error typically "is harmless as long as the ALJ considered that impairment in assessing [the claimant's] residual functional capacity at step four." Gruhler v. Berryhill, No. 17-cv-208-JD, 2017 WL 6512227, at *6 (D.N.H. Dec. 20, 2017) (citing Delia v. Comm'r of Soc. Sec., 433 Fed. Appx. 885, 887 (11th Cir. 2011); Fortin v. Colvin, No. 3:16-cv-30019-KAR, 2017 WL 1217117, at *10 (D. Mass. March 31, 2017)). But if an ALJ finds that an impairment is not severe at step 2, there is no requirement that the ALJ find another impairment to be severe and continue on to conduct an RFC assessment. See, e.g., Baron v. Berryhill, No. 16-cv-308-JL, 2017 WL 3600402, at *7-10 (D.N.H. Aug. 21, 2017) (affirming denial of benefits where ALJ did not move beyond step 2). If the ALJ finds that the claimant

10

does not have any severe impairments at step 2, and that finding is supported by substantial evidence, the analysis stops and the claim is denied. Accordingly, claimant's initial step 2 argument is meritless.

2. Depression and ADHD

In an argument that appears to be directed to the ALJ's assessment of the severity of her depression and ADHD, Champine contends that because the ALJ based his step 2 determination on the opinions of Drs. Hurley and Patalano, who indicated that there was "insufficient evidence to establish an MDI or to rate the severity of [her] conditions," Tr. 120, 130, 140, the ALJ's decision was not supported by substantial evidence, and he committed reversible error by failing to adopt Dr. Kay's uncontroverted opinion that her depression and ADHD were severe impairments. According to Champine:

> The ALJ's dismissal of Dr. Kay's assessment was improper. The ALJ was not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion.

Cl.'s Mem. of Law (doc. no. 8-1) 10 (citing Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Rose v. Shalala, 34 F.3d 13, 18 (1st Cir. 1994) (criticizing ALJ for finding that claimant merely had "possible" chronic fatigue syndrome ("CFS"), when two doctors diagnosed CFS, no doctor disclaimed that diagnosis, and all other doctors endorsed "symptoms fully consistent with

11

CFS"); Nieves v. Sec'y of Health & Human Servs., 775 F.2d 12, 14 (1st Cir. 1985); Suarez v. Sec'y of Health & Human Servs., 740 F.2d 1, 1 (1st Cir. 1984) (criticizing ALJ for ignoring uncontroverted medical reports establishing that claimant's impairment met a listing)). The court does not agree.

First of all, the ALJ's dismissal of Dr. Kay's assessment was not improper. The ALJ explained that he was not persuaded by Dr. Kay's conclusions because they were: (1) based upon a one-time evaluation; (2) inconsistent with Dr. Kay's own observations; and (3) based primarily upon Champine's self-reports. Tr. 17. Those reasons are supported by the record.

Under the applicable regulations, an ALJ should take into account the frequency of examination. See 20 C.F.R. § 416.927(c)(2)(i). It is undisputed that Champine saw Dr. Kay only once. Doc. 11 at 5-6. That is an appropriate and properly supported reason for giving diminished weight to Dr. Kay's opinions.

The applicable regulations also direct ALJs to consider the supportability of the medical opinions they evaluate. See 20 C.F.R. § 416.927(c)(3). Here, while Dr. Kay characterized Champine as having difficulties in the realm of social functioning, his report includes: (1) a general observation that she was friendly and cooperative; (2) mental status examination

12

findings of friendly and cooperative behavior, mildly depressed and anxious mood, and appropriate affect; and (3) no clinical findings supporting a determination that she was limited in the realm of social functioning. Tr. 17, 700-702. Thus, the ALJ permissibly discounted Dr. Kay's opinion for being poorly supported.

Finally, it is well established that "[m]edical opinions based on the claimant's subjective reports, rather than objective medical findings, may be entitled to less weight." Natsis v. Berryhill, No. 16-cv-063-LM, 2017 WL 1032258, at *3 (D.N.H. Mar. 16, 2017) (citing Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987)). Here, the ALJ permissibly discounted Dr. Kay's opinion because it was based upon Champine's subjective reports, which Dr. Kay expressly credited over his own observations and clinical findings.

In addition to claiming that the ALJ improperly discounted Dr. Kay's assessment, Champine intimates that the ALJ either ignored medical evidence or substituted his own views for uncontroverted medical opinions. Again, the court does not agree.

With regard to ignoring medical evidence, Champine does not say what medical evidence the ALJ ignored. With regard to

substituting his own views for uncontroverted medical opinions, the court notes that this is not a case such as [Nguyen, 172 F.3d at 35](), in which the ALJ made an RFC assessment that was supported by nothing other than his own erroneous rejection of a treating physician's opinion.  Here, the ALJ did not make an affirmative factual finding concerning Champine's RFC; he determined that, because Dr. Kay's assessment was not persuasive, Champine had failed to carry her burden of proving that her depression or ADHD were severe impairments.  That determination, in turn, is supported by the record, for reasons the court has already explained.

In sum, Champine has given the court no reason to disturb the ALJ's determination that her depression and ADHD were not severe impairments.

3.  Learning Disability

Champine also claims that the ALJ erred by failing to properly consider the results of her July 2015 IQ testing.  Specifically, she claims that based upon her scores, the ALJ should have found that she has a medically determinable learning disability that qualifies as a severe impairment.  Doc. [8-1]() at 4.  This argument appears to rest upon the regulatory definition of mental retardation in effect at the time of Champine's application for SSI, under which that impairment consisted of

having "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 12.05C (2013 ed.). While she does not say so directly, Champine appears to contend that having an IQ that satisfies half of the definition of mental retardation is a severe impairment.

If this were a case such as Nieves, 775 F.2d at 14, in which the SSA decision maker discredited the only IQ scores in the record, and did so improperly, then perhaps Champine might have a point. But here, rather than substituting his own opinions of Champine's intelligence for uncontroverted medical evidence, the ALJ provided a thoughtful consideration of Champine's 2015 IQ test scores in comparison to her 2009 scores, and in light of the latter, he chose to discount the former. Tr. 17. Because it falls to the ALJ to resolve conflicts in the evidence, see Irlanda Ortiz, 955 F.2d at 769, and because Champine's 2009 IQ scores do not establish medically determinable mental retardation, the court cannot fault the ALJ for declining to determine that the 2015 IQ testing establishes medically determinable mental retardation.

For her part, Champine argues that the ALJ was obligated to credit the 2015 IQ scores over the 2009 scores because "Part A

of the listings, which applies to adults, mandates that the lowest I.Q. score is to be used in determining whether an adult claimant meets the listing." Cl.'s Mem. of Law (doc. no. 8-1) 5 (quoting Nieves, 775 F.2d at 12; citing Diaz v. Sec'y of Health & Human Servs., 746 F.2d 921, 923 (1st Cir. 1984)). The regulation on which Champine relies provides that

> [i]n cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, [the SSA] use[s] the lowest of these in conjunction with [Listing] 12.05.

20 C.F.R. Part 404, Subpt. P, App. 1, Listing 12.00(D)(6)(c) (2013 ed.). The foregoing regulation does not require the SSA to credit the 2015 scores over the 2009 scores; it requires the SSA to use the verbal IQ of 75 as the determinative score from the 2009 testing and the verbal IQ of 70 as the determinative score from the 2015 testing. Thus, Champine's invocation of the lowest-score rule does not entitle her to a determination that the ALJ erred by declining to determine that she had a learning disability that qualifies as a severe impairment.

## IV. **CONCLUSION**

Because the ALJ has committed neither a legal nor a factual error in evaluating Champine's claim, see Manso-Pizarro, 76 F.3d at 16, her Motion for Order Reversing Decision of Commissioner,

doc. no. 8, is denied, and the Acting Commissioner's Motion for Order Affirming Decision of Commissioner, doc. no. 10, is granted. The clerk of the court shall enter judgment in accordance with this Memorandum and Order and close the case.

SO ORDERED.

                                              <u>/s/Paul Barbadoro</u>
                                              Paul Barbadoro
                                              United States District Judge

January 10, 2018

Cc:   Terry L. Ollila, Esq.
      D. Lance Tillinghast, Esq.
      Laurie Smith Young, Esq.